# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Jane Doe,

        Plaintiff,

v.                               Case No. 1:23-cv-3169-MLB

Jeff McCoy and Emilyn Espiritu,

        Defendants.

_____/

## <u>OPINION & ORDER</u>

This is a "revenge porn" case.  Plaintiff claims Defendants violated
the Violence Against Women Reauthorization Act and state law by
showing other people an intimate video of Plaintiff without Plaintiff's
consent.  (Dkt. 1.)  She also asks the Court to allow her to prosecute her
claims anonymously.  (Dkt. 22.)  Defendants moved to dismiss but did not
respond to her motion to appear anonymously.  (Dkts. 7; 8.)  Plaintiff filed
a motion to amend her complaint, which Defendants oppose as futile.
(Dkts. 28, 29, 30.)  The Court grants Defendants' motion to dismiss but
only as to Plaintiff's state law claims, grants Plaintiff's motion to proceed
anonymously, and denies Plaintiff's motion to amend.

## I.   Background[1]

Plaintiff and Defendant Jeff McCoy had an intimate relationship in the past.  (Dkt. 1 ¶ 7.)  During that time, they filmed and photographed some of their "intimate interactions."  (Dkt. 1 ¶¶ 9, 13.)  McCoy also filmed Plaintiff having "intimate encounters" with other men and women.  (Dkt. 1 ¶ 10.)  McCoy made and stored those videos and photos on his cell phone.  (Dkt. 1 ¶ 16.)  Plaintiff describes her relationship with McCoy as "on again, off again," and each time they broke up Plaintiff asked McCoy to destroy or delete the videos and photos—something McCoy assured Plaintiff he did.  (Dkt. 1 ¶¶ 18–22.)

At some point, McCoy started dating Defendant Emilyn Espiritu. In April 2023, the two of them went to a restaurant with McCoy's friends. (Dkt. 1 ¶ 23.)  That night, someone sent Plaintiff a recording from the restaurant showing someone else playing one of the intimate videos of Plaintiff so others at the restaurant could see it.  (Dkt. 1 ¶¶ 24–25.) The recording showed the video in a folder bearing Plaintiff's name,

---

[1] For purposes of Defendants' motions to dismiss, the Court accepts the allegations of Plaintiff's complaint as true.  *See Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010).

suggesting McCoy had not actually destroyed or deleted the videos and photos.  (Dkt. 1 ¶ 26.)

Plaintiff confronted McCoy the next day.  (Dkt. 1 ¶ 28.)  He denied being the one who played the video at the restaurant or the one who recorded the video being played.  (*Id.*)  He told Plaintiff that Espiritu had (without his permission) taken copies of videos from his cell phone and played one of them at the restaurant to the "assembled group."  (*Id.*)

Importantly, Plaintiff does not plead that she accepts the veracity of McCoy's representation about Espiritu's conduct.  She merely alleges what he said on that day.  Plaintiff thus sued McCoy and Espiritu.  (Dkt. 1.)  She claims "one or both of them" violated the Violence Against Women Reauthorization Act (VAWRA) by sharing the intimate video without her consent.  (*Id.* ¶¶ 32-38.)  She also alleges that, to the extent McCoy was telling the truth, he was negligent in allowing Espiritu access to the video.  (*Id.* ¶40.)  She also includes a state law claim against both Defendants for public disclosure of private matters.  (*Id.* ¶44.)

Defendants moved to dismiss.  (Dkt. 7; 8.)  Plaintiff then filed a motion to proceed anonymously to which Defendants did not respond.  (Dkt. 22.)  She also filed a motion to amend her complaint to raise

additional allegations, which Defendants oppose as futile. (Dkt. 28.) Because (as discussed below) the Court agrees amendment would be futile, Plaintiff's initial complaint remains operative, and the Court addresses Defendants' motions to dismiss.

## II.    Motions to Dismiss

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This so-called "plausibility standard" is not a probability requirement. *Id.* Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the

sufficiency of the complaint, not the merits of the case.  *Twombly*, 550 U.S. at 556.

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint."  *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  "A facial attack on the complaint," like Defendants raise here, "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his [or her] complaint are taken as true for the purposes of the motion."  *Id.*

## A.   VAWRA Claim

Obviously, McCoy's and Espiritu's conduct (if true) was classless, crude, and selfish.  The question is whether it also subjects Defendants to civil liability under VAWRA.  That statute prohibits the non-consensual disclosure of intimate images—commonly referred to as "revenge porn."  The statute permits a person "whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce" without his or her consent, to bring a claim against the person who made the

disclosure if the disclosing party knew the individual had not consented to the disclosure of the intimate visual depiction or acted with "reckless[] disregard" as to whether the person had consented to the disclosure. *See* 15 U.S.C. § 6851. A plaintiff may recover actual damages arising from the unauthorized disclosure or liquidated damages in the amount of $150,000 (in addition to costs and attorney's fees). *See* 15 U.S.C. § 6851(b)(3)(A)(i). A plaintiff may also obtain equitable relief, including an injunction ordering a defendant to cease "display or disclosure" of the visual depiction. *See* 15 U.S.C. § 6851(b)(3)(A)(ii). Defendants argue their alleged actions do not constitute a disclosure of the video and had no relationship to interstate or foreign commerce. (Dkts. 7 at 6–9; 8-1 at 7–10.)

## 1. Disclosure

Defendants argue the term "disclosure"—as used in VAWRA— covers only "a conveyance or reproduction of data to third parties which results in a change in ownership, control, or possession of the data." (Dkts. 8-1 at 8; 19 at 4–5; 20 at 5–6.) They contend Plaintiff merely claims Defendants played the video on their phone for others to see. They say that claim establishes only that Defendants "displayed" the video,

6

which they insist "refers to the presentation of the visual depiction in a manner that is visible to others—*e.g.*, on a screen to a limited audience." (*Id.*)

VAWRA defines "disclose" as "to transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(a)(4). This is a broad definition, and certainly broader than Defendants' proposed definition. "In construing a statute [the Court] must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). Publish means to "disseminate to the public"; distribute means "to give out or deliver, especially to members of a group"; and to make something accessible means to make something "capable of being reached . . . or seen." *Publish*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/publish (last visited Feb. 20, 2024); *Disclose*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/disclose (last visited Feb. 20, 2024); *Accessible*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/accessible (last visited Feb. 20, 2024). None of these terms require an act that results in a change of ownership, control,

or possession as Defendants argue.  By way of example, a person can certainly make a video "accessible" to others without ceding ownership, control, or possession of that video to someone else.  Defendants' proposed interpretation thus writes the word "accessible" completely out of the statutory definition.  According to Defendants, they could show the video to anyone, anywhere so long as they used McCoy's phone to play it—perhaps by streaming it to a television or larger screen—and so long as they did not provide copies, control, or physical possession.  Such a narrow interpretation of the term "disclose" is completely inconsistent with the idea of publishing and completely ignores the concept of making something accessible.  The Court concludes Plaintiff's allegation Defendants showed other patrons at a public restaurant the video falls within the statutory definition of disclosing.

Defendants seek to inject uncertainty into the word "disclose" by reference to the words "display *or* disclosure" in the statute's injunctive relief provision, suggesting the use of two different terms means merely displaying a video is insufficient to state a claim for monetary damages or liquidated damages.  (Dkts. 19 at 4–5; 20 at 5–6 (emphasis in original).)  This is the only place the statute mentions a "display," and it

does not define that term, so it is not clear whether Congress intended the terms to have materially different meanings.  And it's generally true that "[w]hen Congress uses 'different language in similar sections,'" courts "should give those words different meanings."  *McCarthan v. Dir. of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (citation omitted).

Regardless of this canon of construction (or congressional intent), however, the Court is bound by the statute's plain language, and both terms mean almost the exact same thing.  *Compare Display*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/display (last visited Feb. 20, 2024) ("[T]o place or spread (something) for people to see[.]"), *with Disclose*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/disclose (last visited Feb. 20, 2024) ("[T]o make known or public," or "to expose to view[.]").  "[T]here is no canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing."  *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1155–56 (11th Cir. 2024) (internal quotation marks and citation omitted).  And, even if

there is a distinction, the subtle difference between the words hardly injects the need for a change of ownership or control into the term "disclose."

Moreover, whether a "display" is different from a "disclosure," really doesn't matter right now. That is because, even if Defendants merely "displayed" the video when they played it at the restaurant, VAWRA still makes that "display" actionable through the imposition of injunctive relief. It would be odd for Congress to fashion a remedy for the "display" of an intimate video if a plaintiff could not bring a claim for that display. And Plaintiff expressly asks in her complaint for equitable relief pursuant to VAWRA. (Dkt. 1 ¶ 38 (citing 15 U.S.C. § 6851(b)(3)(A)(2).) So, even if she did not state a claim for damages under the statute, she still asserts a claim for equitable relief, and the Court has jurisdiction.

McCoy makes another argument. He contends that—given Plaintiff's allegation in the complaint that he admitted Espiritu had taken the video from his phone without his permission and played it at the restaurant—that "the only individuals Plaintiff alleges displayed the

recording are not [McCoy]." (Dkt. 8-1 at 8.)[2]  Plaintiff says her allegations

establish that "McCoy either disclosed the [video] to the crowd at [the

bar] or disclosed the [video] to someone else (like Espiritu) who did."

(Dkt. 12 at 11–12.)

The Court disagrees with McCoy that Plaintiff's allegations suggest

that only Espiritu—and not him—disclosed or displayed the video.

Plaintiff does not allege McCoy's statement about Espiritu was true—

only that he blamed her and exculpated himself.  In fact, nowhere in the

complaint does Plaintiff affirmatively identify the person who showed the

video to the group.  All Plaintiff claims is that someone showed the group

the video, that before this happened McCoy was the only person with

access to it, and that McCoy *told her* Espiritu did it.  Indeed, Plaintiff

expressly suggests McCoy may have been lying, claiming that "[t]o the

extent" his statement was true, he was negligent in allowing Espiritu (or

someone else) to access the video on his phone.  (Dkt. 1 ¶ 40.)  So, at this

stage, both Defendants could potentially be on the hook for VAWRA

violations.  Should discovery answer the open question raised by McCoy,

---

[2] What a strange way of saying his girlfriend did it without his
permission.

he can raise the issue at summary judgment.

### 2.     Interstate or Foreign Commerce

Defendants also say Plaintiff fails to state a claim under VAWRA because she does not allege their purported disclosure of the video satisfies the interstate or foreign commerce element of the statute. (Dkts. 7 at 6–9; 8-1 at 9–10.)  Plaintiff says a cell phone is an instrumentality of interstate commerce as a matter of law, so Defendants' use of a cell phone to show the video satisfies that requirement of the statute.  (Dkts. 11 at 11; 12 at 12–18.)  Plaintiff is right.

The Eleventh Circuit has explained several times that "[c]ellular telephones are instrumentalities of interstate commerce." *United States v. McKinley*, 647 F. App'x 957, 962 (11th Cir. 2016) (citing *United States v. Evans*, 476 F.3d 1176, 1180–81 (11th Cir. 2007)[3]; *see also United States v. Nowak*, 370 F. App'x 39, 45 (11th Cir. 2010); *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004).  This is true even if they are used purely intrastate.  *See United States v. Evans*, 476 F.3d 1176, 1181 (11th

---

[3] The Court recognizes *McKinley* is unpublished and not binding.  The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

Cir. 2007) ("'It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.'") (quoting *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) ("Congress has repeatedly used [its Commerce Clause] power to reach [] conduct in which the illegal acts ultimately occur intrastate, when the perpetrator uses the channels or instrumentalities of interstate commerce to facilitate their commission.").

Plaintiff alleges Defendants—or someone who received the subject video from them—displayed the video from a cell phone. (Dkt. 1 ¶ 34.) She also expressly claims McCoy is the only person who had the video beforehand and that he told her Espiritu took the video from his cell phone and showed it to others. (Dkt. 1 ¶¶ 26, 28.) Either way, this means one of Defendants allegedly used a cell phone to show that video to other people or McCoy distributed that video (which only existed on his cell phone) to someone else who did that. So, Plaintiff adequately pleads Defendants used an instrumentality of commerce to disclose (and/or display) the video.

Defendants counter that, because they allegedly displayed the video

to "a group of people at a local restaurant" without using any cell phone signal to transmit it, the video did not have "any relationship to interstate or foreign commerce." (Dkts. 7 at 8; 8-1 at 9–10.) But proving that an intimate visual depiction was disclosed "in or affecting interstate or foreign commerce" is only one way a plaintiff can satisfy the statute. 15 U.S.C. § 6851. The other way is for the plaintiff to show the defendant disclosed the depiction "using any means or facility of interstate or foreign commerce." *Id.* "The distinction between 'in' and 'of' interstate commerce . . . is critical." *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999). As the Court already explained, the Eleventh Circuit is clear: a cell phone is an instrumentality of commerce—full stop. Because the statute permits a plaintiff to recover when the defendant discloses the visual depiction using an instrumentality *of* interstate or foreign commerce, it does not matter whether the defendant also disclosed the depiction *in* interstate or foreign commerce. *See In re BFW Liquidation, Inc.*, 899 F.3d 1178, 1189–90 (11th Cir. 2018) ("When the plain language of a statute is unambiguous, [the Court] need not—indeed, should not—look beyond that plain language to determine its meaning."). In other words, Defendants' (apparently) purely intrastate disclosure of the

subject video by using a cell phone satisfies the interstate or foreign commerce requirement of the statute. Plaintiff's VAWRA claim survives, as does the Court's jurisdiction.

### B. State-Law Claims

Plaintiff raises state-law claims of negligence against McCoy and of public disclosure of private matters against both Defendants. (Dkt. 1 ¶¶ 39–49.) Plaintiff's public disclosure claim involves four separate torts: intrusion upon seclusion; public disclosure of embarrassing private facts; publicity which places Plaintiff in a false light; and misappropriation of Plaintiff's name or likeness. (Dkt. 1 ¶¶ 45.) Defendants say Plaintiff's state-law claims must be dismissed because she does not plead the requisite elements. (Dkts. 7 at 9–13.)

### 1. Negligence

To prove negligence under Georgia law, a plaintiff must show (1) the defendant had a legal duty to conform to a standard of conduct; (2) the defendant breached this duty; (3) the defendant's breach caused the plaintiff's injury; and (4) the plaintiff suffered a compensable injury. *Shortnacy v. N. Atlanta Internal Med., P.C.*, 556 S.E.2d 209, 213 (Ga. Ct. App. 2001). Plaintiff claims "[t]o the extent [] McCoy told the truth when

he told Plaintiff that [Espiritu] took the [subject video] . . . from his cell phone without his consent, [] McCoy is guilty of negligence" by not deleting the video, not encrypting it, and not "maintain[ing] such vigilance with respect to his phone that such a hijacking of the [video] could not have occurred." (Dkt. 1 ¶ 40.)

McCoy argues Plaintiff's negligence claim should be dismissed because she fails to assert any legal duty on his part to delete the video or protect it from disclosure by others. Plaintiff contends VAWRA "creates a duty not to disclose intimate recordings like those displayed by Defendants," the breach of which is actionable under state law. (Dkt. 12 at 18.) But she cannot rely only on a federal statute to claim McCoy violated a state duty because she does not point to any "traditional state-law duty owed by" McCoy that was breached by his purported violation of VAWRA. *See Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018). Instead, the "substance" of her complaint is that McCoy "violated federal law." *Id.* (internal quotation marks omitted).

Plaintiff next argues a Georgia statute prohibiting the nonconsensual disclosure of videos or photos "which occur in any private place and out of public view" imposed upon McCoy "a legal duty not to

distribute" such images.  (Dkt. 12 at 18–19 (quoting O.C.G.A. § 16-11-62).)  She contends McCoy's purported breach of this duty is actionable under O.C.G.A. § 51-1-6, which says "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if [she] suffers damage thereby."  But Plaintiff did not bring a claim under either of those statutes, and the Court will not allow her to retroactively amend her complaint through her response to McCoy's motion to dismiss. *Gibbons v. McBride,* 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) ("A complaint may not be amended by briefs in opposition to a motion to dismiss.") (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011)).[4]

Plaintiff's allegations do not establish McCoy had a duty to destroy the subject video or to take extra steps to prevent its disclosure.  Her

---

[4] To the extent Plaintiff suggests the purported duty VAWRA imposed on McCoy is actionable under § 51-1-6—putting aside that Plaintiff did not bring a claim under § 51-1-6—that statute applies only "where a cause of action does not otherwise exist." *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004).  Because VAWRA creates a private right of action, § 51-1-6 "does not allow [Plaintiff] to pursue duplicative remedies for an alleged violation of federal law." *Id.* at 1222.

negligence claim against him thus fails.

## 2.    Intrusion Upon Seclusion

"In order to recover for intrusion upon seclusion, it is necessary to show 'a physical intrusion analogous to a trespass.'" *Johnson v. Allen*, 613 S.E.2d 657, 660 (Ga. Ct. App. 2005) (citation omitted). "In more recent cases, [Georgia courts] have adhered to the requirement of a physical intrusion, but with the understanding that this physical requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored her activities." *Benedict v. State Farm Bank, FSB*, 709 S.E.2d 314, 318 (Ga. Ct. App. 2011) (internal quotation marks and citation omitted). So electronic intrusion may suffice.

Defendants say Plaintiff's claim for intrusion upon seclusion fails because she "does not allege any conduct that is akin to surveillance, a physical trespass upon her property, or a physical touching of her person." (Dkts. 7 at 10; 8-1 at 12.) Defendant is right about that. Plaintiff, however, argues that, while the surveillance or physical trespass requirement applies to "intrusion into seclusion and solitude," it does not apply to "intrusion [] into private affairs." (Dkt. 11 at 17

(emphasis omitted).)  She cites no Georgia authority for the proposition that there is a meaningful difference between these two theories. Instead, she relies primarily on *Summers v. Bailey*, which says "'Georgia courts have extended the principle [of actionable intrusion] beyond physical intrusion to include prying and intrusions into private concerns, such as . . . peering into the windows of a home.'" (*Id.* (emphasis omitted) (quoting 55 F.3d 1564, 1566 (11th Cir. 1995).)  This merely confirms that allegations of surveillance, physical trespass, or something like that are necessary for an intrusion claim.[5]  She does not raise those kinds of allegations and her claim thus fails.

### 3.   Public Disclosure of Private Facts

"'In order to state a cause of action for invasion of privacy premised on the public disclosure of private facts, there must be a public disclosure in which the information is distributed to the public at large.'" *Baatz v. Mohawk ESV, Inc.*, 2021 WL 2449856, at *6 (N.D. Ga. Apr. 22, 2021) (quoting *Finnerty v. State Bank & Tr. Co.*, 687 S.E.2d 842, 744 (Ga. Ct.

---

[5] Plaintiff also cites an old Alabama case for the proposition that intrusion upon one's "emotional sanctum" is sufficient to state a claim. (Dkt. 11 at 18–19 (citing *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So. 2d 705, 711 (Ala. 1983).)  Regardless of whether that case says what Plaintiff claims it does, it is not the law in Georgia.

App. 2009)).   Georgia courts have held that "to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons is not sufficient to constitute a public disclosure." *280 Partners, LLC v. Bank of N. Ga.*, 835 S.E.2d 377, 383 (Ga. Ct. App. 2019) (internal quotation marks and citation omitted).

Defendants say Plaintiff's allegations that they played the video to a small group of people (rather than the public at large) doom her public disclosure claim.   (Dkts. 7 at 11; 8-1 at 12–13.)   Plaintiff says "the disclosure was made in a crowded bar," so there is "no telling how many people" saw it. (Dkt. 11 at 21.)  But her allegations suggest the video was not shown to anyone other than a group of people gathering at the bar, not the public at large.  The Court cannot speculate that anyone other than those within eyeshot saw the video.[6]  Plaintiff also points to two cases holding disclosures purportedly "much less offensive than the one implicated here" were "actionable . . . under Georgia law."  (Dkt. 11 at

---

[6] Plaintiff interprets the term "public at large" to mean "every member of the public."  (Dkt. 11 at 24.)  That is not what the law suggests.  While the cases don't put a hard-and-fast number on how many people qualify as the "public at large," it is clear that the law makes disclosure actionable when the defendant makes it to something like a television audience, not to a group of friends at a restaurant.

17–18.)  But in both those cases, the defendants televised embarrassing private facts about the plaintiffs.  *See Zieve v. Hairston*, 598 S.E.2d 25, 27–28 (Ga. Ct. App. 2004); *Multimedia WMAZ, Inc. v. Kubach*, 443 S.E.2d 491, 493 (Ga. Ct. App. 1994).  They don't apply here, and this claim fails as well.[7]

### 4.    False Light and Misappropriation

Plaintiff does not respond to Defendants' arguments regarding her claims for false light and misappropriation, so the Court deems those arguments unopposed.  LR 7.1, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  Plaintiff thus abandoned those claims.  *Onyeogoh v. Cucinelli*, 2020 WL 13544294, at *1 (N.D. Ga. Nov. 24, 2020) ("[W]hen an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned.") (collecting cases).

### C.    Punitive Damages and Attorneys' Fees

Defendants say Plaintiff's claim for punitive damages and

---

[7] Plaintiff also seems to conflate the requirements for a state-law disclosure claim with those of an intrusion claim, citing instances where courts found that intrusion by surveillance was actionable to support her disclosure claim.  (Dkt. 11 at 18–20.)  But those two torts have different elements.  Regardless, both her claims fail for the reasons discussed.

attorneys' fees should be dismissed because it is derivative of her other claims, all of which fail.  (Dkts. 7 at 13–14; 8-1 at 17.)  Plaintiff's VAWRA claim, however, survives.  So, she may seek punitive damages and attorneys' fees should she succeed on that claim.   15 U.S.C. § 6851(b)(3)(A)(i); *see also Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) ("Punitive damages are generally available for willful or intentional violations of a . . . statutory duty[.]").

### III.   Motion to Amend[8]

Plaintiff moves to amend her complaint.  (Dkt. 28.)  She says "[s]ince the filing o[f] Plaintiff's claims, and in preparation to respond to Defendants' motions to dismiss, Plaintiff has become aware of additional claims available to her that she wishes to assert at this time."  (Dkt. 28 at 3.)  Specifically, she wants to bring claims against Defendants for breach of fiduciary duty and for violations of O.C.G.A. § 16-11-62.  (Dkt. 28 at 3–5.)  Defendants oppose, saying Plaintiff's proposed amendment

---

[8] In her responses to Defendants' motions to dismiss, Plaintiff asked to amend her complaint to raise the same additional claims she seeks to bring in her motion to amend.  (Dkts. 11 at 23–25; 12 at 20–22.)  The Court deems her arguments in those briefs moot given the motion to amend.  So, in deciding the motion to amend, the Court considers only the arguments raised in that motion, and not in Plaintiff's other briefs.

would be futile.  (Dkts. 29; 30.)

Under the Federal Rules of Civil Procedure, a party may amend its complaint once as a matter of course within twenty-one days after serving it.  Fed. R. Civ. P. 15(a)(1).  All other amendments to pleadings require opposing counsel's written consent or leave of court.  Fed. R. Civ. P. 15(a)(2).  Courts "should freely grant leave when justice so requires." *Id.* But courts should not grant leave where, among other things, "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  A proposed "amendment is futile where the complaint as amended would still be subject to dismissal." *Cox v. Mills*, 465 F. App'x 885, 889 (11th Cir. 2012).

### A.    Breach of Fiduciary Duty

Plaintiff wants to add a claim against Defendants for breach of fiduciary duty, alleging that she placed "trust and confidence" in McCoy "when she allowed him to make the" intimate videos and photos and that he breached that duty by disclosing them (or allowing them to be disclosed). (Dkt. 28 at 4–5.)  She also claims Espiritu "aided and abetted McCoy in so doing."  (Dkt. 28 at 5.)

A claim for breach of fiduciary duty requires proof of three

23

elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 452 (Ga. Ct. App. 2013). To prove someone aided and abetted such a breach, the plaintiff must show: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Cottrell v. Smith*, 788 S.E.2d 772, 786 (Ga. 2016). So, in both instances, a plaintiff must establish the existence of a fiduciary relationship.

Defendants say this claim fails because Plaintiff alleges no factual or legal basis for a fiduciary duty. (Dkts. 29 at 4–8; 30 at 3–6.) Defendants are correct. Plaintiff's proposed amended complaint is devoid of any factual allegations establishing a fiduciary relationship. She asserts in conclusory fashion that McCoy acted as her fiduciary because they were in a romantic relationship and because she allowed him to take

24

intimate videos and photos of her.  (Dkt. 28 at 4–5.)  She points to no authority—and the Court can find none—suggesting this comes even close to creating a fiduciary relationship.  In fact, Georgia courts are clear: "mere friendship and close fellowship, without more, do not create a fiduciary relationship." *Smith v. Walden*, 549 S.E.2d 750, 751 (Ga. Ct. App. 2001); *see also Cottrell*, 788 S.E.2d at 786 ("[defendant], by virtue merely of her status as a paramour of [plaintiff's], owned no fiduciary duty to [plaintiff]").  Nor is there any "confidential relationship between close friends with regard to a transaction in which they are not joined together as partners, promoters, joint venturers, or otherwise to achieve a common business objective[.]" *Arko v. Cirou*, 700 S.E.2d 604, 608 (Ga. Ct. App. 2010).  Plaintiff's fiduciary claim is, therefore, untenable and amendment futile.

Plaintiff also argues whether a fiduciary relationship exists is a question of fact depending on the unique circumstances of the case and that such a relationship can exist so long as the purported fiduciary "'is so situated as to exercise a controlling influence over the will, conduct, and interest of another.'" (Dkt. 32 at 2 (quoting *King v. King*, 888 S.E.2d 166, 169 (Ga. 2023).)  She points to a case in which a court held that a

clergyman might "'occup[y] a confidential relationship toward a member of his church,'" or that "'an actionable breach of fiduciary duty may arise when a confidential relationship is abused for purposes of sexual gratification.'" (Dkt. 32 at 4–5 (quoting *Brewer v. Paulk*, 673 S.E.2d 545, 549 (Ga. Ct. App. 2009).)

While the existence of a fiduciary relationship may be a question of fact, in deciding whether her allegations establish a breach of fiduciary duty, the Court is bound by the facts pled. Those allegations do not suggest Plaintiff and McCoy had the kind of confidential relationship that establishes a fiduciary duty. Their relationship was nothing like that of business partners, or of a clergyman and a congregant, or something similar. Instead, her allegations establish only the precise sort of "personal" relationship Georgia courts have unequivocally held does not create a fiduciary obligation.

## B. Georgia Statutory Claim

Plaintiff also seeks to amend to raise a new claim under O.C.G.A. §§ 16-11-62 and 51-1-6. (Dkt. 28 at 4–5.) Defendants say this amendment would be futile because § 16-11-62—a criminal statute—does not provide a private cause of action. (Dkts. 29 at 8; 30 at 6.) Plaintiff

seems to concede § 16-11-62 does not provide a cause of action, but argues it creates a "statutory right" that is actionable under § 51-1-6.  (Dkt. 32 at 11–12.)

As already explained, O.C.G.A. § 16-11-62 prohibits someone from—among other things—"distribut[ing], without legal authority, . . . any photograph, videotape, or record, . . . of the activities of another which occur in any private place and out of public view without the consent of all persons observed[.]"  Georgia courts have held, however, that "the statute[] establishing the criminal offense of unlawful eavesdropping or surveillance under [O.C.G.A.] § 16-11-62 . . . 'do[es] not create [a] private right[] of action.'"  *Rogers v. Dupree*, 824 S.E.2d 823, 835 (Ga. Ct. App. 2019) (McFadden, P.J., concurring in part).  Plaintiff doesn't argue any differently.  (Dkt. 32 at 9–10.)  But, she says, because her allegations establish a violation of § 16-11-62 (which she argues provides her a statutory right to privacy), Defendants' conduct is actionable under O.C.G.A. § 51-1-6.

As noted above, O.C.G.A. § 51-1-6 says "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in

express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." That statute generally "allows an individual to assert a tort claim for the violation of a legal duty where a cause of action does not otherwise exist." *Higdon*, 393 F.3d at 1221. But § 51-1-6 "does not give rise to a private cause of action unless the statute outlining the legal duty provide for a civil remedy." *Northup v. Conseco Finance Corp.*, 141 F. Supp. 2d 1372, 1376 (M.D. Ga. 2001). As a criminal statute, O.C.G.A. § 16-11-62 does not provide any such remedy. *See Calhoun v. Fed. Nat. Mortg. Ass'n*, 823 F.2d 451, 455 (11th Cir. 1987) ("Penal statutes in Georgia do not give rise to a private cause of action for the conduct proscribed," and so are not actionable under § 51-1-6). So, Plaintiff's new state-law claim would fail, and amendment would be futile.

## IV.   Motion to Proceed Anonymously

Plaintiff moves to proceed anonymously, citing the "sensitive and highly personal nature of [her] claims." (Dkt. 22 at 4.) Defendants do not oppose Plaintiff's motion.[9]

---

[9] Defendants did complain about Plaintiff's filing suit anonymously, arguing it violated federal pleading standards. (Dkts. 7 at 5–6; 8-1 at 6–7.) They focused mostly on Plaintiff's failure to seek leave of court. (*Id.*)

In determining whether to allow a plaintiff to proceed anonymously, "the relevant question is whether the plaintiff 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, 823 F. App'x 862, 866 (11th Cir. 2020) (citation omitted). The Eleventh Circuit has held that a plaintiff should be allowed to proceed anonymously in cases involving, among other things, "matters of a highly sensitive and personal nature." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

The Court concludes this case—in which Plaintiff seeks to vindicate a substantial privacy right—presents such highly sensitive and personal information. Disclosure of this information—and of Plaintiff's identity—would plainly compound the harm she has already purportedly suffered as result of Defendants' alleged conduct. Indeed, VAWRA seeks to protect significant privacy interests, and even provides for injunctive relief maintaining the plaintiff's confidentiality in the event his or her claim succeeds. 15 U.S.C. § 6851(b)(3)(B). And the Court cannot identify

---

Because she has now done so—and Defendants do not respond—the Court assumes they do not oppose the motion.

any significant public interest in knowledge of or access to Plaintiff's identity. So, the Court concludes Plaintiff's privacy right outweighs the presumption of public disclosure and allows Plaintiff to proceed using a pseudonym. *See Doe v. Willis*, 2023 WL 6907100, at *1 (D. Colo. Sept. 22, 2023) (granting plaintiff asserting VAWRA claim leave to proceed anonymously).

## V.   Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss Plaintiff's Complaint (Dkts. 7; 8), **GRANTS** Plaintiff's Motion to Proceed Under a Pseudonym (Dkt. 22), and **DENIES** Plaintiff's Motion for Leave to File First Amendment to Complaint (Dkt. 28). The Court **DISMISSES** Plaintiff's state-law claim (Count II). Her VAWRA claim (Count I) survives.

**SO ORDERED** this 28th day of February, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE